**Office of Disciplinary Counsel v. Bowen**

Disciplinary Board Docket no. 10 D.B. 2003, 28 D.B. 2003.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

SHEERER, *Member,* July 29, 2004—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court

with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

On January 31, 2003, Office of Disciplinary Counsel filed a petition for discipline against Michael G. Bowen, respondent. The petition charged respondent with violating Rules of Professional Conduct 1.1, 1.3, 1.4(a), 1.4(b), 1.15(b), and 1.16(d) in connection with his representation of five separate clients. Respondent did not file an answer to the petition. On March 26, 2003, petitioner filed an additional one-charge petition for discipline charging respondent with violating Rules of Professional Conduct 1.1, 1.3, 1.4(a) and 1.4(b) in connection with his representation of one client. Respondent did not file an answer. On April 7, 2003, petitioner filed a motion to consolidate the two matters for hearing. On June 3, 2003, the Disciplinary Board granted the motion and consolidated the matters for hearing.

A disciplinary hearing took place on August 26, 2003, before Hearing Committee 2.05 comprised of Chair Thomas G. Jackson, Esquire, and Members Michael S. Dinney, Esquire and Mary G. McLaughlin Davis, Esquire. Respondent appeared pro se. Immediately preceding the hearing, petitioner and respondent entered a joint stipulation of fact. Petitioner presented the testimony of eight witnesses as well as supporting exhibits. Respondent testified on his own behalf.

The Hearing Committee filed a report on February 27, 2004, finding that respondent violated the Rules of Pro-

fessional Conduct and recommending a suspension of one year and one day with a practice monitor after reinstatement.

No briefs were filed by the parties.

The Disciplinary Board adjudicated this matter at the meeting of May 18, 2004.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner, whose principal office is situated at Suite 1400, 200 North Third Street, Harrisburg, Pennsylvania 17101, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid rules.

(2) Respondent, Michael G. Bowen, was born in 1949 and was admitted to practice law in Pennsylvania in 1990. He maintains his law office at Suite 7, 62 West Swamp Road, Doylestown, PA 18901.

(3) Respondent is subject to the jurisdiction of the Disciplinary Board of the Supreme Court of Pennsylvania.

(4) Respondent has a prior history of discipline consisting of a private reprimand administered in 2000. Respondent was retained to file an offer of compromise with

the IRS and was paid an advance fee. Respondent neglected the matter for two years, after which time the client terminated his services.

*Charge I—Mazakas Matter*

(5) In October 2001, respondent met with David Mazakas and agreed to prepare and file a Chapter 13 bankruptcy petition for him.

(6) At the meeting in October 2001, respondent provided, and Mr. Mazakas signed, a retainer agreement whereby Mr. Mazakas agreed to pay $1,300 in legal fees plus the court filing fee of $185 and a courier fee of $75, for a total of $1,560.

(7) On or about December 10, 2001, Mr. Mazakas gave respondent a check in the amount of $1,000 as partial payment for respondent's fee.

(8) On or about January 27, 2002, respondent met with Mr. Mazakas and reviewed a Chapter 13 plan.

(9) On or about January 27, 2002, respondent accepted the balance of the fee owed to him by Mr. Mazakas in the amount of $560.

(10) During the month of February 2002, respondent spoke to Mr. Mazakas several times over the telephone concerning bill collectors calling.

(11) During respondent's telephone conversations with Mr. Mazakas in February 2002, respondent told Mr. Mazakas that the collection people could not call him and to give any credit collection callers respondent's number.

(12) Thereafter, some collection people called respondent's office and left messages for respondent to return their calls.

(13) Starting at the end of February 2002 and into March 2002, Mr. Mazakas called respondent's office and left messages for respondent to return his calls concerning the status of his case.

(14) Respondent failed to return Mr. Mazakas' calls.

(15) At the time of the hearing, respondent had not filed a Chapter 13 bankruptcy petition.

(16) Mr. Mazakas left several messages on respondent's home answering machine offering to negotiate a refund of the fee paid.

(17) Respondent did not respond to the messages.

(18) To obtain a return of the fee paid to respondent, Mr. Mazakas filed a civil action against respondent in March 2003 and obtained a judgment before a district justice.

(19) Shortly thereafter, respondent appealed the judgment awarded to Mr. Mazakas.

(20) The civil action filed by Mr. Mazakas was stayed because respondent filed for bankruptcy on behalf of himself.

*Charge II—Taras Matter*

(21) In December 2000, Linda Taras telephoned respondent and requested advice concerning a recent IRS audit determination that she and her husband, Rodney Taras, owed $315,000 to the IRS. She also asked about

valuation of assets, including the characterization and valuation of her and her husband's horse raising and racing business.

(22) On or about December 14, 2000, Mrs. Taras faxed to respondent certain documents that she had received from the IRS and other documents that respondent requested.

(23) Following this fax, respondent spoke to Mrs. Taras by telephone and offered advice on how to complete certain IRS forms, including an offer in compromise form and a "Request for a collection due process hearing."

(24) On February 14, 2001, Mr. and Mrs. Taras met with respondent at his office to discuss the IRS matter and sign a retainer agreement and power of attorney form.

(25) Mr. and Mrs. Taras paid respondent $1,500 as a retainer to handle their case.

(26) Respondent informed the Tarases that he would contact Revenue Officer Madelon Lankford on their behalf.

(27) On February 28, 2001, respondent called Ms. Lankford and arranged a meeting with her on March 7, 2001.

(28) Respondent met with Ms. Lankford on March 7, 2001. Ms. Lankford requested appraisals and the most recent tax return, as well as corrected information on financial statements. Respondent told her he would contact her by March 16, 2001.

(29) Respondent left a voicemail message on Ms. Lankford's telephone on March 20, 2001, stating that he was waiting to receive information from his clients and

would respond to her in the next few days. He thereafter had no further contact with Ms. Lankford.

(30) In April 2001, respondent spoke to Mrs. Taras on several occasions regarding the 2000 income tax return. He did not tell his clients that there was a 30-day deadline for providing information to Ms. Lankford.

(31) During a conversation with Mrs. Taras in April 2001, respondent told her "sometimes it takes a very long time until things get going and that, you know, it could be a while until things progress on it . . . ." (NT 48, 49.)

(32) On June 7, 2001, respondent received a letter from Appeals Officer Bibb acknowledging that the Taras' appeal had been referred to him and that he would be contacting respondent to schedule a conference.

(33) Respondent did not inform his clients of the letter from Officer Bibb.

(34) Respondent did not take any action regarding the letter.

(35) In July 2001, Mrs. Taras prepared the 2000 tax return for her and her husband and forwarded a copy to respondent along with two appraisals that he requested for Ms. Lankford.

(36) After receiving the tax return and appraisals, respondent did not advise his clients that Ms. Lankford had already told respondent that there would be no offer in compromise.

(37) Between July 2001 and January 2002, respondent failed to take action to further his clients' matter.

(38) In January 2002, Appeals Officer Bibb sent respondent a letter indicating that a conference regarding

the Tarases' appeal was scheduled for February 21, 2002, at the IRS office in Philadelphia.

(39) Respondent did not notify his clients of the conference date and failed to appear at the hearing.

(40) By letter of February 25, 2002, Officer Bibb advised the Tarases that they had failed to appear for the due process hearing as scheduled and that there was a March 18, 2002 deadline for them to contact Officer Bibb to schedule a hearing.

(41) After receiving the letter, Mrs. Taras tried to contact respondent to find out what was happening.

(42) Respondent did not respond to any of the messages.

(43) By notice dated March 29, 2002, the IRS advised Mr. and Mrs. Taras that the imposition of a federal tax lien on their property was appropriate since Mr. and Mrs. Taras had not responded to the IRS' attempts to contact them or offer any collection alternatives or otherwise dispute the lien.

(44) Between April 1, 2002 and April 4, 2002, Mrs. Taras attempted to reach respondent by telephone to discuss the notice, but respondent failed to return the calls.

(45) Mrs. Taras also faxed respondent and he did not respond to the faxes.

(46) By certified letter of May 18, 2002, Mr. and Mrs. Taras demanded that respondent immediately return the $1,500 retainer fee and that respondent return all copies of documents, including the original appraisal they had sent to respondent.

(47) Respondent failed to respond to the certified letter.

(48) Respondent failed to refund any unearned fees.

(49) As of the hearing, Mr. and Mrs. Taras' tax case is still open before the IRS and they have incurred additional interest and penalties since retaining respondent.

### Charge III—Capp Matter

(50) On July 11, 2000, respondent met with Annette Capp and agreed to file a bankruptcy petition on her behalf.

(51) Ms. Capp signed a retainer agreement. Between July 11, 2000 and October 2, 2000, Ms. Capp paid $1,685 to file a Chapter 13 bankruptcy petition.

(52) In October 2000, respondent told Ms. Capp he would contact her when a court date had been set by the bankruptcy court.

(53) Between October 2000 and May 2002, Ms. Capp telephoned respondent's office and left messages on numerous occasions.

(54) Between October 2000 and May 2002, Ms. Capp received several notices from creditors and collection agencies, which Ms. Capp forwarded to respondent.

(55) By certified letter of May 6, 2002, Ms. Capp requested respondent advise her of the status of her case.

(56) As of the date of the hearing, respondent had not filed a bankruptcy petition on behalf of Ms. Capp.

(57) Respondent did not refund any unearned fees.

*Charge IV—Rodger Matter*

(58) On February 13, 2001, respondent met with John Rodger and entered into a retainer agreement whereby he agreed to represent Mr. Rodger in connection with a matter pending before the IRS.

(59) Mr. Rodger paid respondent $1,500 in advance of representation.

(60) By letter of May 2, 2001, respondent forwarded IRS Offer in Compromise form 433 A to Mr. Rodger for him to complete and sign, which Mr. Rodger did.

(61) In July 2001, an IRS employee told Mr. Rodger that respondent had not filed an offer in compromise.

(62) Between May 3, 2001 and December 5, 2001, Mr. Rodger called respondent's office on numerous occasions and left many messages concerning the status of his case.

(63) Respondent did not return these calls.

(64) On December 5, 2001, Mr. Rodger sent respondent a letter requesting information on the status of his case before the IRS.

(65) Respondent failed to respond and did not refund any unearned fees.

*Charge V—Armstrong Matter*

(66) On March 13, 2002, Peter Armstrong of Specialty Haulers Inc., met with respondent and requested that he represent Specialty Haulers in a matter pending before the Pennsylvania Department of Revenue.

(67) Respondent accepted a retainer of $1,500.

(68) Between March 13, 2002 and August 19, 2002, Mr. Armstrong left several messages on respondent's answering machine and faxed several letters to his office requesting respondent contact him.

(69) Respondent did not communicate in any fashion with Mr. Armstrong after March 13, 2002.

(70) By certified letter of August 19, 2002, Mr. Armstrong terminated respondent's services and requested a refund of $1,500.

(71) The letter was returned as unclaimed.

(72) By certified letter of October 10, 2002, Mr. Armstrong sent the same letter to respondent. This letter was not returned.

(73) Respondent never responded to the certified letter, nor did he refund any unearned fees.

*Charge VI—Leonhard Matter*

(74) In November 2001, Frank and Patricia Leonhard requested that respondent represent them in a Chapter 13 bankruptcy.

(75) Respondent agreed to represent them for $1,500, which the Leonhards paid.

(76) On November 7, 2001, Mr. Leonhard met with respondent and gave him some paperwork and documents respondent had requested in order to file the bankruptcy petition.

(77) On or about November 7, 2001, respondent filed a Chapter 13 bankruptcy petition on behalf of his clients.

(78) Shortly thereafter, the court advised that there were missing documents, including a disclosure of attorney compensation, a Chapter 13 plan, a matrix, all schedules, a statement of financial affairs, and summary of schedules.

(79) The court informed respondent that the case would be dismissed if the missing documents were not filed within 15 days.

(80) On November 29, 2001, respondent requested an extension of time to file the missing documents.

(81) The court granted respondent an extension to December 7, 2001.

(82) On December 18, 2001, the court entered an order dismissing the bankruptcy petition.

(83) Respondent did not notify his clients of the dismissal of their petition.

(84) Respondent failed to notify his clients that a sheriff's sale of their property had been scheduled.

(85) After Mrs. Leonhard learned of the sheriff's sale, she contacted respondent and left messages.

(86) Respondent did not return the calls.

(87) Mrs. Leonhard asked her employer, Brendan J. Malley, Esquire, to contact respondent.

(88) Mr. Malley spoke to respondent, who advised him that the bankruptcy had been dismissed. Mr. Malley asked that respondent forward the Leonhard's file to them.

(89) Respondent did not forward the file to his clients.

(90) Mrs. Leonhard hired another attorney, who contacted respondent regarding the matter.

(91) Respondent did not respond to any letters from the Leonhard's new counsel.

(92) Respondent has maintained a solo practice in the area of bankruptcy and credit law since becoming a member of the Pennsylvania Bar.

(93) At present, respondent has no employees and works by himself.

(94) Respondent has not implemented any new office procedures since January 2003 involving calendaring of client matters, communicating with clients, or record keeping.

(95) The only new office procedures made by respondent in response to the disciplinary proceedings are creation of a memo in each file reflecting activity in the file and the use of a date stamp on incoming mail.

## III. CONCLUSIONS OF LAW

By his conduct as set forth above, respondent violated the following Rules of Professional Conduct:

(1) R.P.C. 1.1—A lawyer shall provide competent representation to a client.

(2) R.P.C. 1.3—A lawyer shall act with reasonable diligence and promptness in representing a client.

(3) R.P.C. 1.4(a)—A lawyer shall keep a client informed about the status of a matter and promptly comply with reasonable requests for information.

(4) R.P.C. 1.4(b)—A lawyer shall explain a matter to the extent necessary to permit the client to make informed decisions regarding the representation.

(5) R.P.C. 1.15(b)—A lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and upon request shall promptly render a full accounting regarding such property.

(6) R.P.C. 1.16(d)—Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as surrendering property to which the client is entitled and refunding advance payments of fee that have not been earned.

## IV. DISCUSSION

This matter is before the Disciplinary Board on consolidated petitions for discipline filed against respondent by Office of Disciplinary Counsel. As petitioner, Office of Disciplinary Counsel bears the burden of proof by a preponderance of the evidence that is clear and convincing that respondent engaged in professional misconduct. *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872 (1986). Review of the record demonstrates that petitioner met its burden.

Respondent engaged in a pattern of neglect, failure to communicate and failure to account in six client matters. Each client paid respondent the full fee demanded and in each matter respondent did not complete the representation. Respondent further did not account for his services and failed to refund any portion of the fee that was not earned despite specific requests from his clients that he do so.

Respondent admits that in each matter he did demand and accept his full fee and that he did not complete the representation, he did not give any client an accounting of services rendered, he did not refund any portion of the unearned fee and did not return any client files. He does not believe that he neglected his clients' matters, but for the Annette Capp case. He also contends he did not fail to communicate with his clients.

The evidence shows that respondent did violate Rule of Professional Conduct 1.3 by failing to represent all six of the complaining clients with reasonable diligence and promptness. He failed to file a bankruptcy petition in the Mazakas matter and failed to file an offer in compromise in the Taras and Rodger matters, as well as appear for a hearing in the Taras matter. In the Armstrong matter, respondent took no action after accepting payment. Although he did file a bankruptcy petition in the Leonhard matter, he did not file the necessary supporting documents and, as a consequence, the petition was dismissed. Respondent's management of his cases represents the very definition of neglect.

Respondent maintains that he did communicate, albeit orally, with his clients, and informed them of the strategy of their cases. The testimony of the complaining witnesses refutes this statement. Mr. Mazakas and Ms. Capp made numerous calls and wrote letters that remained unanswered. Mrs. Taras presented copies of telephone bills and letters and faxes that she sent, the majority unanswered. Mr. Rodger and Mrs. Leonhard testified similarly. Mr. Armstrong sent two certified letters, one of which was returned as unclaimed and the

other never received a response. None of these clients believed that they were kept apprised of the status of their matters, and all were frustrated by their inability to contact respondent. All of these witnesses were found to be credible. All of these witnesses, unknown to each other, testified to a similar pattern of failure to communicate from respondent. The cumulative nature of this evidence persuades the board that respondent did engage in a violation of R.P.C. 1.4.

Respondent's misconduct is aggravated by his history of prior discipline, his failure to take responsibility and show remorse, and his failure to address the problems of his law office management. Respondent has been practicing law in Pennsylvania since 1990 with an emphasis on bankruptcy and creditor law. Yet, the misconduct engaged in comprises the simple mistakes and inattention to detail that might be expected from a newly admitted practitioner. These mistakes appear in part to be a result of respondent's poor office management. At the time of the misconduct, respondent practiced by himself with no support staff, and, more importantly, he had no office procedures to assist him in timely filing documents and returning telephone calls and letters.

There is no question that serial neglect, failure to communicate, failure to refund fees and return client files warrants suspension. There are several cases involving similar misconduct that have resulted in suspensions ranging from one year and one day to two years. *In re Anonymous No. 72 D.B. 1999,* 658 Disciplinary Docket no. 3 (Pa. April 2, 2001), *In re Anonymous No. 142 D.B. 1999,* 667 Disciplinary Docket no. 3 (Pa. May 8, 2001). Although respondent requests a

discipline less than suspension, he already has had the opportunity to benefit from private discipline but did not change his conduct after receiving a private reprimand in 2000.

Based on the totality of the record, the board recommends that respondent be suspended for one year and one day.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania recommends that the respondent, Michael G. Bowen, be suspended from the practice of law for a period of one year and one day.

It is further recommended that the expenses incurred in the investigation and prosecution of this matter are to be paid by the respondent.

Board Vice-Chair Rudnitsky did not participate in the May 18, 2004 adjudication.

## ORDER

And now, October 22, 2004, upon consideration of the report and recommendations of the Disciplinary Board dated July 29, 2004, the petition for review and response thereto, it is hereby ordered that Michael G. Bowen be and he is suspended from the bar of this Commonwealth for a period of one year and one day, and he shall comply with all the provisions of Rule 217, Pa. R.D.E. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.